# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA CITY DIVISION

331 PARTNERS, LLC,
a Georgia Limited Liability Company,

      Plaintiff,

v.                             Case No.: 3:23-cv-24769-TKW-ZCB

331 FREEPORT PARTNERS, LLC,
a Florida Limited Liability Company,

      Defendant.

_____/

## DEFENDANT 331 FREEPORT PARTNERS, LLC REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, 331 Freeport Partners, LLC ("Freeport" or "Seller"), by and through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1(D), hereby files its Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment. There are no genuine issues of material fact in dispute and summary judgment is due to be granted in Freeport's favor.

## INTRODUCTION

While the Parties seem to agree on the facts at hand, there seems to be some dispute as to the import or interpretation of those facts. The parties generally agree on the following:

1.      The parties executed the document at issue in July 2021. *See, e.g.*, ECF No. 40, at 4; ECF No. 43, at 5.

2.      Between July 2021 and June 2023, Don Carll (as representative of the Plaintiff) had numerous discussions with myriad people about eventualities that might one day be possible in terms of developing the subject property that resulted in no deliverables of any sort being produced in furtherance of the due diligence process. *See, e.g.*, ECF No. 40, at 6; ECF No. 43, at 14.

3.      Between July 2021 and June 2023, Plaintiff never submitted any Development Order application or request to Freeport for approval to modify the existing PDP entitlements. *See, e.g.*, ECF No. 43, at 17; ECF No. 48, at 6.

4.      As recently as November 16, 2023, Plaintiff had still failed to obtain any of the necessary documents for submitting a Development Order application. *See, e.g.,* ECF No. 43, at 19-20; ECF No. 48, at 7.

5.      Between July 2021 and the present, Plaintiff has never submitted or even attempted to submit either a Develop Order application or PDP amendment request for any portion of the subject property. *See, e.g.*, ECF No. 43, at 17; ECF No. 48, at 6.

Freeport will not rehash any of those facts or issues herein and, instead, merely provides that summary for context within this submission.

Freeport does dispute Plaintiff's argument that Freeport should be estopped from challenging the validity of the alleged contract due to its "actions" for two years. Further, Freeport also disputes Plaintiff's argument that because they are seeking a declaratory judgement that the contract is executory, rather than specific performance of the contract, the basic rules of contract law no longer apply.

## ARGUMENT

## The Contract is Invalid

Plaintiff argues, essentially, that any time parties subjectively believe that a document they are executing is a contract, that the rules governing what constitutes a contract no longer apply and they are later barred from challenging the validity of the purported contract. ECF No. 48 at 9. Freeport does not take issue with the law cited by Plaintiff, however, it is Plaintiff's application of the law to the facts of this case that is incorrect. Plaintiff's argument is clearly adverse to Florida and Federal law and would lead to an absurd result.

Plaintiff states,

In the context of contracts, the doctrine of equitable estoppel provides

that "once a party accepts the proceeds and benefits of a contract, that

party is estopped from renouncing the burdens the contract places upon

him." *Fineberg v. Kline*, 542 So.2d 1002, 1004 (Fla. 3d DCA 1988).

Furthermore, "one who accepts the benefits of a contract cannot, having

retained these benefits, question the validity of the contract." *Billings*

*v. City of Orlando*, 287 So.2d 316, 318 (Fla. 1973). ECF No. 48.

Freeport agrees wholly with this premise. However, the remainder of Plaintiff's

argument is without factual support. The contemplated transaction was one for the

payment of money by Plaintiff to Freeport in exchange for title to the land described

in the "contract." For Plaintiff's argument to carry any weight, Plaintiff would have

had to pay some portion of the purchase price to Freeport with Freeport then refusing

to transfer title while challenging the validity of the contract and attempting to retain

the purchase money. First and foremost, that would be a specific performance or

disgorgement action, not one to simply keep the Inspection Period open as Plaintiff

is seeking here. Second, no such exchange of funds has ever occurred. Freeport has

never **accepted** any benefit from the alleged contract at issue in this case.

Plaintiff's contention that the Earnest Money Deposit constitutes a "benefit"

accepted by Freeport is without merit. The Earnest Money Deposit was placed in

Escrow by the Plaintiff and was fully refundable. ECF No. 42-1. In fact, Freeport

has notified the Escrow agent to refund the money which is clearly not the same as

Freeport accepting a benefit from the alleged contract. ECF No. 46-1. Plaintiff

alleges that "Defendant allowed Plaintiff to Deposit $250,000 into escrow." ECF

No. 48 at 10. However, Freeport did no such thing- Plaintiff deposited the money

pursuant to the agreement, however, Freeport has notified the escrow agent to refund the money, and has never accepted the deposits.

Plaintiff also claims that because Freeport cited to the Trigger Notice provision of the alleged contract, it is now estopped from claiming that the contract is invalid. However, this is incorrect. It is through the process of attempting to send the Trigger Notice that Freeport became aware that the contract was invalid when originally signed, because of the lack of mutuality, which it could not have known of until the issues arose. *See generally*, ECF No. 43 at 21-25. Obviously, no party signs a contract believing it is invalid from the outset. Further, the subjective belief of the parties at the outset that they entered into a valid contract does not supplant the requirements of contract law, namely, that there be offer, acceptance, consideration and mutuality as well as all essential terms. "[C]ontracts are formed by objective acts, not subjective beliefs." *Bowen v. Taylor-Christensen*, 98 So.2d 136, 140-41 (Fla. 5th DCA 2012). Here, there was a complete failure of essential terms and a lack of consideration in support of this "contract." Plaintiff would have this court find and believe that a $50,000 **refundable** deposit constitutes valid consideration for tying up the subject property for two-plus years with the option, in Plaintiff's sole discretion, to simply walk away at any point. ECF No. 48, at 10-11.

Plaintiff cites *Gleason* for the proposition that Freeport is estopped from challenging the validity of the "contract". ECF No. 48 at 11-12. *Gleason* is

distinguishable in that it is a clear case of the defendant accepting the benefit of Gleason's image and golf course design to increase its own profits for a period of three years before seeking to invalidate the contract. *See Gleason v. Leadership Housing, Inc.*, 327 So.2d 101 (Fla. 4th DCA 1976). Had equitable estoppel not applied to prevent the defendant from attempting to invalidate the contract, the defendant would have been able to profit from the use of Mr. Gleason image without ever having to honor its side of the agreement. *Id.* Here, no such circumstance exists. Freeport has not received any payments or even been provided with any formal documentation related to the potential development of the property which Freeport could then use for its own benefit if the "contract" at issue is deemed not to be valid. In the absence of an actual benefit having been conferred upon Freeport, the *Gleason* case is inapposite.

Plaintiff further argues that the two years of "strategy meetings," interstate travel (merely because Mr. Carll lived in Atlanta, GA while the property at issue is in Florida), and money spent by Plaintiff is to his detriment. ECF No. 48 at 10-11. However, none of those actions benefitted Freeport, who has still received no benefit of their alleged bargain. Mr. Carll's actions were not performed under the bargain to perform his responsibilities under the alleged contract. These actions were part of Plaintiff's purported due diligence which would have been borne by Plaintiff without recompense had Plaintiff opted to terminate the "contract" instead of Freeport. ECF

No. 42-1, at 13-15. As such, any expenses associated with this "due diligence" simply cannot be argued to have been for Freeport's benefit. Quite to the contrary, they were for Plaintiff's own benefit in deciding whether it ultimately wanted to purchase the subject property. As already discussed, to perform under the contract, Plaintiff would have needed to take meaningful steps to apply for Approvals and to secure water and sewer from the City, which was never done. ECF No. 43 at 25-30. Mr. Carll's actions, therefore, are irrelevant to the alleged contract at issue and Plaintiff's estoppel argument.

**Failure of Mutuality Renders the Executory Features of a Contract Void**

Plaintiff's attempts to elude basic premises of contract law by seeking a declaratory judgment to declare the contract executory, rather than asserting a claim for specific performance, seeks a ridiculous outcome. "A bilateral contract terminable at the will of one party is not binding, and may be terminated by either party." *Pick Kwik Food Stores, Inc. v. Tenser*, 407 So.2d 216, 218 (Fla. 2d DCA 1981). This includes "executory" contracts. *Id.*

Plaintiff, in seeking to have the contract declared executory "such that the parties' rights and obligations still exists" as compared to from a claim for specific performance, is a distinction without difference. Plaintiff cites no authority regarding the difference between the two concepts. Further, Plaintiff states clearly "Defendant certainly had the ability to act to enforce the Contract or **terminate it**, thus providing

mutuality," which is what Freeport has done by terminating the contract. ECF No. 48 at 16. Further, "when one party to an entire executory contract has failed to perform it on his part, and the other party is not in default, and is in a condition to rescind, he (the latter) may abandon the contract and bring an action of assumpsit to recover back what he had paid, or for what he has done thereunder, whenever assumpsit will lie independent of the contract." *Cox v. Grose*, 97 Fla. 848, 853–54, 122 So. 513, 515 (1929).

Plaintiff failed to perform, by failing to seek Approvals or vesting of water and sewer rights for the Property. Therefore, Freeport was within its rights to terminate the agreement.

This Court should reject the Plaintiff's argument that the remedy sought, in the form of a declaration as to the executory nature of the contract, somehow requires the Court to overlook the fact that the contract was illusory, void for lack of essential terms, and fails to have mutuality. ECF. No. 43, at 21-25. However, even if the Court finds that the contract was valid from the outset, Plaintiff has breached and Freeport was well within its rights to terminate the contract. Whether the contract is executory or not is, therefore, irrelevant.

### If a Reasonable Time is Inferred, Plaintiff Has Breached

Plaintiff argues that because the purported contract does not contain a duration as to the time period for the Inspection Period, it should be determined by the intent

of the parties, nature of the contract, and circumstances surrounding its execution. ECF No. 48, at 18. Where the Plaintiff and Freeport disagree is what a reasonable time period under the circumstances of this purported contract are or would be.

Plaintiff cites to Daniel Hayes' deposition, Keith Dantin's deposition, and Don Carll's deposition, for the proposition that development contracts of this nature take between two to three years to perform. *See, e.g.*, ECF No. 48, at 19-20; ECF No. 40, at 8-11. While that is certainly true, that testimony was all regarding start to finish, meaning bid to building, not from executing a purchase agreement to closing the Inspection Period. For example, Mr. Dantin was discussing that "it would take up to a year in creating that master plan, creating that critical path, creating the phasing needed, creating the economic model." ECF No. 39-6 at 73, lines 15-18. Plaintiff acknowledges in their November 2023 correspondence that they had not even begun to obtain these documents after over two years, which in essence concedes that they would then not be able to conclude this transaction for another year at the earliest, showing that it had no intention to abide by a reasonable timeline. Moreover, the "contract" contemplated a two year timeframe after the end of the Inspection Period within which Plaintiff would have been required to fully and finally purchase the last portion of the subject property. ECF No. 42-1, at 7-9. Assuming a one year Inspection Period, this would have subsumed the entirety of the three years Plaintiff claims is a reasonable timeframe to be inferred. However,

as Plaintiff acknowledged in its own November 2023 correspondence (some 28 months after execution of the document), it had not even begun obtaining formal documentation needed to procure the Approvals to close the Inspection Period and initiate the two-year glide path to contract completion. This means that the transaction that Plaintiff claims should be allowed three years to complete would extend beyond, at minimum, to between 4 and 5 years…all on a $50,000 refundable deposit.

If the Inspection Period were to be interpreted as extending for a reasonable period of time- which Freeport disputes- Plaintiff far exceeded that period of time by failing to even begin taking any concrete steps, as evidenced in the November 2023 correspondence, to develop the necessary planning, design, and concurrency documentation necessary to seek Approvals to close the Inspection Period. However, it is the failure of the contract to have any timelines, when they were essential, necessary terms, that renders the contract void from the outset.

## Conclusion

Because the purported contract at issue lacks essential terms, is vague, is unenforceable for failure of mutuality and a lack of meeting of the minds, Summary Judgment must be granted to Freeport. Even if the contract were enforceable, because Partners breached the contract prior to Freeport terminating the agreement, Summary Judgment must be granted to Freeport. Lastly, because Partners is seeking

a Declaratory Judgment to which they are not entitled because of their unclean hands, this Court must grant Summary Judgment in favor of Freeport. Plaintiff's arguments in opposition to Freeport's Motion for Summary Judgment do not refute Freeport's arguments and may be disregarded. Therefore, this Court must grant Summary Judgment to Freeport.

<div style="margin-left: 45%;">

/s/ *William R. Sickler*
William R. Sickler • FBN 0070639
robbie@guildaylaw.com
Colleen D. Mullen Yorio • FBN 100327
colleen@guildaylaw.com
Guilday Law, P.A.
1983 Centre Pointe Blvd., Suite 200
Tallahassee, FL 32308
Secondary: stephanie@guildaylaw.com
           dana@guildaylaw.com
(850) 224-7091 (Telephone)
(850) 222-2593 (Facsimile)
*Attorneys for Defendant*

</div>

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 56.1**

I certify that this document complies with the 3,200 word limit of Local Rule 56.1(D) because it contains 2,348 words, exclusive of those portions exempted under the Local Rule.

<div style="margin-left: 45%;">

/s/ *William R. Sickler*
William R. Sickler • FBN 0070639

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 15, 2024, a true and correct copy of the foregoing has been furnished electronically by the CM/ECF system to:

Charles T. Wiggins
Matthew P. Massey
Beggs & Lane RLLP
501 Commendencia Street
Pensacola, FL 32502
ctw@beggslane.com
mpm@beggslane.com

/s/*William R. Sickler*
Attorney